FILED

November 10, 2016

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 8:00 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | |
|---|---|
| CAROLYN BEECHER, **Employee,** | ) Docket No.: 2016-08-0279 |
| v. | ) |
| McKESSON CORPORATION, **Employer,** | ) State File Number: 97742-2015 |
| And | ) |
| OLD REPUBLIC INSURANCE CO., **Insurance Carrier.** | ) Judge Amber E. Luttrell |

---

## EXPEDITED HEARING ORDER DENYING REQUESTED BENEFITS

---

This matter came before the undersigned Workers' Compensation Judge on October 14, 2016, upon the Request for Expedited Hearing filed by Carolyn Beecher pursuant to Tennessee Code Annotated section 50-6-239 (2015). The present focus of this case is whether Ms. Beecher is entitled to medical and temporary disability benefits for her alleged work-injury. The central legal issue is whether Ms. Beecher came forward with sufficient evidence for the Court to determine she is likely to prevail at a hearing on the merits that she suffered an injury arising primarily out of and in the course and scope of her employment. For the reasons set forth below, the Court holds that she did not, and thus is not entitled to the requested medical and temporary disability benefits at this time.[1]

### History of Claim

The following facts were established at the Expedited Hearing. Ms. Beecher, a self-represented litigant, is a fifty-five-year-old resident of Shelby County, Tennessee. She worked as a material handler[2] for McKesson's National Redistribution Center for elevenyears. (Ex. 2.)[3] Ms. Beecher explained her job consisted of repetitively lifting

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

[2] Ms. Beecher referred to her job title as a "double checker."

[3] Rick Clifton, McKesson's HR Representative, testified McKesson is a pharmaceutical distribution center that supplies prescription medications to retail pharmacies.

1

boxes off the conveyor belt to "double-check" them and place them back down on the line.[4]

This claim involves Ms. Beecher's severe pelvic organ prolapse, which resulted in surgery consisting of a total hysterectomy, pelvic suspension, and a bladder sling. (Ex. 9.) She alleged this condition arose out of a work incident on November 16, 2015, when she picked up a heavy tote on the line and felt a sharp pain in her pelvic area. (T.R. 1.) Upon experiencing this pain, Ms. Beecher stopped working and walked off the line to get water. She denied reporting the pain to anyone at that time, and returned to work.

Ms. Beecher testified she continued working for several weeks with pain in her pelvic area. Following a long shift on Thanksgiving Day, she experienced severe pain, went to the restroom at home and noticed a protrusion from her pelvic area. She still did not seek medical attention thinking the condition might resolve itself. When the protrusion persisted, Ms. Beecher testified she returned to work on November 30, and went to the human resources (HR) department to report her condition. She stated no one was in the HR office; therefore, she went to the front office and spoke to "Nicole."[5] She stated she told Nicole about her condition and that Nicole advised her to contact Cigna.[6] Ms. Beecher testified she next called her gynecologist, Dr. Elizabeth Mann, and requested an appointment.

According to the medical records admitted into evidence, Ms. Beecher saw Dr. Mann on December 1, 2015. (Ex. 7.) Dr. Mann noted a chief complaint of lower abdominal pain with possible prolapse. She noted Ms. Beecher's intermittent pain started "2 weeks ago" and referred her to Dr. Stephen Portera, a urologist, for consultation. Dr. Mann added an addendum to her December 1 record stating the following, "Seeing Dr. Portera for cystoale/uterine prolapse. Pt required to perform repetitive, heavy lifting as part of her responsibilities. Noticed prolapse after a day of long heavy lifting. Planning surgical repair." *Id.*

Ms. Beecher saw Dr. Portera on December 9, and he scheduled surgery. (Ex. 8.) Prior to undergoing surgery, Ms. Beecher testified she returned to work and reported a work-injury to her supervisor.[7] Rick Clifton, McKesson's HR representative, testified that Ms. Beecher first reported a November work-injury to McKesson on December 10. No panel was offered at that time and Ms. Beecher continued treating with Dr. Portera.

On December 14, Dr. Portera's office noted a telephone message from Ms.

---

[4] The parties admitted into evidence a McKesson ADA Physical Requirements Form for Ms. Beecher's position, which indicated the job required continuous lifting and carrying ten pounds, frequent lifting of eleven to twenty pounds, and occasional lifting of twenty-one to fifty pounds. (Ex. 5.)

[5] There was no testimony of Nicole's job position with McKesson or why Ms. Beecher reported her symptoms to her. The Court notes Ms. Beecher did not state whether she told Nicole she believed her condition was work-related.

[6] The Court understood Cigna to be McKesson's health insurance provider.

[7] Ms. Beecher did not identify the supervisor to whom she reported a work-injury.

Beecher, which stated "Pt wants you to call her . . .about possible getting workman's comp to pay for her surgery. . ." *Id.* Dr. Portera commented, "Spoke with patient on 12/14/15, advised her that while we are glad to fill out FMLA paperwork or something similar. . . filing a claim and following up with it through workman's comp is not something handled by our office. She must file that on her own."

Dr. Portera performed surgery on January 7, 2016.[8] Ms. Beecher took FMLA leave and received short-term disability benefits while off work for her condition.[9][10] She testified that following her surgery, a Sedgwick claims adjuster contacted her regarding her reported work-injury and advised that she would need to see a panel physician for evaluation.[11] Ms. Beecher selected Memphis OBGYN Associates from the panel, and Sedgwick scheduled an appointment with Dr. Corey Tinker on February 17, 2016. (Exhibits 4 and 9.)

Ms. Beecher saw Dr. Tinker and provided a history that her symptoms, "began suddenly after lifting something heavy at work. No issues prior to that but job involves repeated heavy lifting." Dr. Tinker noted Ms. Beecher had a good result from surgery. Dr. Tinker responded to questions posed by an insurance representative who attended the appointment with Ms. Beecher and stated,

> Insurance rep with pt today states that they need my evaluation of if the condition was likely work related. I informed them that my assessment was limited in that I did not [see] the pt when the condition was present nor did I perform the corrective surgery. There is nothing to physically evaluate at this point as it has already been surgically corrected. Information given to me asked if I felt the pt's condition could have been 50.1% or more caused by the patient's work. Pelvic organ prolapse is always multi-factorial but with the nature of the patient's work and the way in which the symptoms presented, I do feel it likely it was likely [sic], that percentage or more, contributory to the pt's condition. My evaluation is limited by the above

---

[8] The operative report indicated Dr. Portera performed a total vaginal hysterectomy, bilateral salpingo-oophorectomy, anterior repair, suburethral sling, and cystoscopy. Ms. Beecher's post-operative diagnosis was Grade 3-4 anterior vaginal defect, Grade 2 uterine prolapse, genuine stress incontinence, and urethral hypermobility. (Ex. 8.)

[9] The Court notes the parties disputed when Ms. Beecher last worked at McKesson. Ms. Beecher testified she last worked on November 30, 2015. She admitted into evidence a letter from Cigna, which indicated she was on approved FMLA leave and drew STD from November 30, 2015 through March 6, 2016. (Ex. 12.) Rick Clifton testified McKesson's Employee Earning Record indicated Ms. Beecher worked in the facility and earned wages part of December 2015. (Ex. 15.)

[10] Ms. Beecher submitted medical bills representing outstanding balances to providers and her insurance copays. McKesson's counsel objected to admissibility of the medical bills stating he had not previously seen the bills. Counsel asserted if the Court finds Ms. Beecher sustained a compensable work-injury, McKesson will review the bills to determine if reasonable and necessary for the injury. The Court marked the medical bills for Identification purposes as "I.D. Ex. 1."

[11] The Court understood Sedgwick to be McKesson's third-party administrator for workers' compensation claims.

3

noted constraints.

At McKesson's request, Dr. Todd Chappell, a Tennessee board-certified obstetrician-gynecologist, performed a review of Ms. Beecher's records and issued a report with his causation opinion. (Ex. 10.) Dr. Chappell noted he reviewed medical records regarding Ms. Beecher's prolapse from Dr. Mann, Dr. Tinker, and Methodist Hospital. He further reviewed "specific employment information including her job description and requirements as well as information regarding the November 16, 2015 work incident."

Dr. Chappell stated uterine prolapse is "usually a gradual process in which causation is multi-factorial." He explained the risk factors can include: "previous pregnancy and childbirth, especially from vaginal delivery, smoking, advanced age, lack of estrogen and/or menopause, increased intra-abdominal pressure such as from increased weight, chronic coughing, pelvic masses, or accumulation of fluid, and prior pelvic surgery." He opined Ms. Beecher's records revealed "more than one of these significant risk factors existed before November 2015, and contributed to the development of the condition. Two of these pre-existing conditions alone include two prior pregnancies, one of which resulted in vaginal delivery, and being overweight with a BMI of 28.1." Dr. Chappell concluded,

> Considering all information I have reviewed and analyzed, including Ms. Beecher's job description, medical literature, and medical records, it is my opinion that a work incident of November 16, 2015 was not the primary factor that caused Ms. Beecher's uterine prolapse. Further, considering all causes and pre-existing factors, it is my opinion that even if a work incident was a potential contributing factor, work was no more than a possible minor contributing factor and the described work incident cannot be verified as being the primary or main contributing cause that led to the condition…it is likely that this condition could have developed before and would have developed notwithstanding the described November 16, 2015 work or incident.

*Id.*

Upon review of Ms. Beecher's treating physician's records, Dr. Chappell stated,

> Based upon my review and analysis. . .it is not clear what information was reviewed or considered regarding work activities, pre-existing risk factors or possible alternative causes of Ms. Beecher's diagnosis. . .these factors must be considered, addressed, and explained when assessing the cause of a condition of this nature, especially when pre-existing risk factors exist and causation is multi-factorial.

4

*Id.*

Finally, Dr. Chappell opined within a reasonable degree of medical certainty that "Ms. Beecher's work activities or a single work incident were not the primary cause of the uterine prolapse and it is impossible to prove that work was responsible for any amount of the condition much less responsible for causing the majority or greater than 50% of the condition." *Id.*

McKesson denied compensability of Ms. Beecher's claim on March 25, 2016, contesting that she sustained an injury in the course and scope of her employment, medical causation, and contending that her injury did not meet the statutory requirements of Tennessee Code Annotated 50-6-212.[12] (Ex. 3.)

Following the Expedited Hearing, the parties took the deposition of Dr. Tinker on October 28, and filed the transcript as a late-filed exhibit.[13] (Ex. 14.) Dr. Tinker testified he did not have Dr. Portera's medical records or Methodist Hospital's records at the time of his exam of Ms. Beecher. *Id.* at 14. He based his opinions on the information he had at that time, which consisted of Dr. Mann's records and the history taken from Ms. Beecher. *Id.* at 13. Dr. Tinker also did not have any specific information regarding the date or place Ms. Beecher's alleged injury occurred. He further testified he did not know the weight she was lifting at the time she alleged her injury. *Id.* at 11.

Dr. Tinker testified pelvic organ prolapse is always multifactorial and stated, "It is medically difficult to attribute it to any one factor or to know what percent of factors make an interpretation." *Id.* at 12-13. He stated that pregnancy and menopause can be important causes. *Id.* at 9. Dr. Tinker also opined that a person's age and body mass index (BMI) can also impact pelvic organ prolapse. *Id.* at 10. He testified Ms. Beecher's BMI was 27.3, which is considered obese. *Id.* at 10-11. Considering Ms. Beecher's risk factors, Dr. Tinker testified, "I think conditions existed in Ms. Beecher, both, that tended to cause pelvic organ prolapse and a few that may have tried to prevent it." *Id.* at 27.[14]

Concerning Dr. Tinker's causation opinion from his report, McKesson's counsel asked Dr. Tinker the following question,

---

[12] The Court notes the Notice of Denial cited T.C.A. 50-6-212, the hernia statute.

[13] Prior to the Expedited Hearing, the Court granted McKesson's motion to take the deposition of Dr. Tinker on October 28. McKesson contended Dr. Tinker refused to communicate with its counsel except for in a deposition. Ms. Beecher agreed to taking the deposition; however, she requested the Expedited Hearing proceed as scheduled on October 14. The Court granted Ms. Beecher's request to proceed with the October 14 Expedited Hearing date and to admit Dr. Tinker's deposition into evidence as a late-filed exhibit. McKesson's counsel filed Dr. Tinker's deposition on November 2.

[14] The Court notes McKesson's counsel questioned Dr. Tinker regarding a radiology report dated December 16, 2015 attached as Exhibit 11. Counsel read the clinical information section, which stated "55 year old female with uterine fibroids with history of bladder prolapse on several occasions." In response to questioning, Dr. Tinker agreed he had not seen the record. Ms. Beecher adamantly denied any history of organ prolapse prior to her alleged work-injury. The Court notes Dr. Tinker did not refer to this record in his testimony concerning his medical causation opinions.

5

Q: Well, taking into consideration all of these factors - - which I don't know if you took into consideration - - are you comfortable testifying, as of today, that work was the primarily cause of the development of Ms. Beecher's pelvic organ prolapse?

A: As I said in my note, pelvic organ prolapse is always multifactorial.

Q: Yes.

A: The extent to which one thing contributes more than something else is more of a legal question than a medical one, and so doctors don't spend their time trying to figure out what percentage of each one of those factors had impact. So it's a difficult question to answer for a doctor because it doesn't go in. . .there were doctors who saw her when the condition was present that had a much better ability to evaluate than I did.

*Id.* at 22.

Dr. Tinker further testified,

Based on the limited information that I had in having seen it after correction, my assessment was that, certainly, I thought work had an important role. Was that 35 percent, 49 percent, 52 percent, 57 percent? That's not a medical question and I don't know how to answer that. . .I would say that I have no way to accurately assess a percentage.

*Id.* at 23.

On cross-examination, Ms. Beecher commented on the questions asked of Dr. Tinker, but did not pose specific questions. She concluded her cross-examination by stating, ". . .I never had no problems. I had a good, clean slate, I go to [Dr. Mann] every year for my annual and never had no complications or nothing. With that being said, I know it was job related and that's it." Dr. Tinker responded, "Yes, ma'am."

At the Expedited Hearing, Rick Clifton testified on behalf of McKesson. Mr. Clifton testified that Ms. Beecher's report of an injury to him on December 10. He stated her description of injury was not specific. She informed him she felt some pain when she picked up something heavy in mid-November. Mr. Clifton further testified Ms. Beecher never came to him to inquire if McKesson could accommodate any work restrictions during her treatment, and upon her release without restriction on March 7, Ms. Beecher informed Mr. Clifton she did not wish to return to work.

6

Ms. Beecher filed a Petition for Benefit Determination (PBD) seeking temporary disability benefits and medical benefits. The parties did not resolve the disputed issues through mediation, and the Mediating Specialist filed a Dispute Certification Notice. This hearing followed.

At the Expedited Hearing, Ms. Beecher requested compensation for her time off work, payment of outstanding medical bills, and for "the organ that she lost."

McKesson countered that Ms. Beecher did not establish a compensable injury as defined in Tennessee Code Annotated section 50-6-102(14). McKesson relied upon Dr. Chappell's medical opinion that Ms. Beecher's pelvic prolapse did not primarily arise out of her employment.

## Findings of Fact and Conclusions of Law

The following legal principles govern this case. Because this case is in a posture of an Expedited Hearing, Ms. Beecher need not prove every element of her claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, she must come forward with sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1)(2015).

To prove a compensable injury, Ms. Beecher must show that her alleged injury arose primarily out of and in the course and scope of her employment. *Id.* at § 50-6-102(14). To do so, she must show her injury was caused by an incident, or specific set of incidents, identifiable by time and place of occurrence. *Id.* at § 50-6-102(14)(A). Further, she must show, "to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." *Id.* at § 50-6-102(14)(C). "Shown to a reasonable degree of medical certainty" means that, in the opinion of the treating physician, it is more likely than not considering all causes as opposed to speculation or possibility. *Id.* at § 50-6-102(14)(D).

Applying these principles to the facts of this case, the Court holds that Ms. Beecher did not come forward with sufficient evidence to satisfy her burden of proving her condition arose *primarily* out of and in the course and scope of her employment at this time. Specifically, there is insufficient medical proof to establish that Ms. Beecher's described injury contributed more than fifty percent (50%) in causing the condition considering all causes.[15]

---

[15] The Court is not persuaded by McKesson's alternative argument that Ms. Beecher's injury is subject the

The only medical opinions before the Court addressing causation are from Dr. Tinker and Dr. Chappell. While Dr. Tinker initially stated in his record that Ms. Beecher's described work injury likely contributed 50.1% or more to the development of her pelvic organ prolapse, he subsequently altered his opinion after being asked deposition questions concerning Ms. Beecher's other risk factors. He stated:

> Based on the limited information that I had in having seen it after correction, my assessment was that, certainly, I thought work had an important role. Was that 35 percent, 49 percent, 52 percent, 57 percent? That's not a medical question and I don't know how to answer that. . .I would say that I have no way to accurately assess a percentage.

The Court notes in making his original causation assessment, Dr. Tinker conceded he based his opinion solely on the records of Dr. Mann and Ms. Beecher's history of lifting something heavy when the pain began. He did not know when she sustained the injury or the weight she allegedly lifted at the onset of her pain. In his deposition, while stating he believed Ms. Beecher's described injury was an important factor, he was non-committal and unwilling to opine that it was the primary (greater than 50%) cause of her condition.

Dr. Chappell, who performed a records-review evaluation, was more decisive. He opined, "Ms. Beecher's work activities or a single work incident were not the primary cause of the uterine prolapse and it is impossible to prove that work was responsible for any amount of the condition much less responsible for causing the majority or greater than 50% of the condition." (Ex. 10.)

The Court recognizes that Ms. Beecher disputes these conclusions, especially the opinion of Dr. Chappell, whom she never met. Ms. Beecher's disagreement with the physicians' opinions, while genuine, is legally insufficient to refute their conclusions. Neither Ms. Beecher nor the Court has the medical qualifications to revise the doctors' medical opinions for them. As our Appeals Board observed, "Judges are not well-suited to second guess a medical expert's treatment, recommendations, and or diagnoses absent some conflicting medical evidence or some other countervailing evidence properly admitted into the record." *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *8 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). All the Court has before it are the opinions of Dr. Tinker and Dr. Chappell, neither of which opined that the alleged work event contributed more than fifty-percent (50%) to Ms. Beecher's pelvic organ prolapse. Absent a contrary medical opinion, Ms. Beecher

requirements of Tennessee Code Annotated section 50-6-212 for hernias as this is no medical proof supporting such an argument. When asked if Ms. Beecher's condition was similar to a rupture/hernia, Dr. Tinker responded, "A hernia is a defect in both the muscle and the fascial layer. A pelvic organ prolapse is more of a defect of a ligament insertion." (Ex. 14 at 28.)

8

cannot establish that her alleged injury arose primarily out of and in the course and scope of her employment.

Therefore, this Court holds, as a matter of law, Ms. Beecher has not come forward with sufficient evidence at this time from which this Court may conclude she is likely to prevail at a hearing on the merits. Accordingly, her request for medical and temporary disability benefits is denied at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Beecher's claim against McKesson and its workers' compensation carrier for the requested medical benefits and temporary total disability benefits is denied at this time.

2. **This matter is set for an Initial (Scheduling) Hearing on Monday, December 12, 2016, at 11:00 a.m. Central Time.**

**ENTERED this the 10th day of November, 2016.**

**Judge Amber E. Luttrell**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

An Initial (Scheduling) Hearing has been set with **Judge Amber Luttrell, Court of Workers' Compensation Claims. You must call toll-free at 855-543-5039 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order

to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the

10

case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
1. Affidavit of Carolyn Beecher
2. Employer's First Report of Work Injury or Illness
3. Notice of Denial of Claim for Compensation
4. C42 Panel of Physicians
5. McKesson ADA Physical Requirements Form
6. Wage Statement
7. Medical records of Memphis Obstetrics and Gynecological Associates
8. Medical records of Center for Urinary and Pelvic Disorders and Methodist Le Bonheur Healthcare
9. Medical Record of Dr. Corey Tinker
10. Medical Records of B. Todd Chappell, M.D.
11. Methodist LeBonheur Healthcare Radiology Report
12. CIGNA FMLA and Short Term Disability Letters
13. Employer's Request for Admissions
14. Dr. Corey Tinker's Deposition (Late Filed Exhibit)
15. McKesson Employee Earnings Record

Marked for Identification:
1. Medical Bills (Collective exhibit)

Technical record:[16]
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employee's Position Statement
5. Employer's Response to Petition for Benefit Determination

---

[16] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the __10th__ day of November, 2016.

| Name | Certified Mail | First Class Mail | Via Email | Service sent to: |
|---|---|---|---|---|
| Carolyn Beecher, Self-Represented Employee | X | X | X | carolynbeecher1@yahoo.com 4817 Saddlehorn Circle Memphis, TN 38125 |
| Thomas P. Cassidy, Jr., Esq., Attorney for Employer | | | X | tom.cassidy@mgclaw.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims

13